NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISANDRA RODRIGUEZ, | Civil Action No.: 17-cv-9429 |
| Plaintiff, | **OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

Before the Court is Plaintiff Lisandra Rodriguez's appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the Administrative Law Judge's decision is vacated and remanded for further proceedings.

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for disability insurance benefits on March 13, 2014, alleging disability as of November 4, 2013. (Tr.[1] at 194-206). The application was denied initially on April 22, 2014

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 6).

and upon reconsideration in August 2014. (*Id.* at 22). On September 4, 2016, a hearing was held before an Administrative Law Judge ("ALJ"). (*Id.* at 40-69). The ALJ issued a decision on January 3, 2017 finding that, despite having severe impairments, Plaintiff is able to perform jobs that exist in significant numbers in the national economy and was therefore not disabled, as defined by the SSA. (*Id.* at 22-35). Plaintiff requested review of the decision and the Appeals Council denied the request on August 29, 2017. (*Id.* at 1-8). On October 26, 2017, Plaintiff instituted this action. (ECF No. 1).

### B. Personal and Employment Background

Plaintiff was forty-two years old at the time of her administrative hearing. (Tr. at 57). Plaintiff did not complete high school and has difficulties reading and writing English. (*Id.* at 46). Plaintiff lives with her husband, children, and mother. (*Id.* at 55). She is able to care for her personal needs, prepare simple meals, and clean her home. (*Id.* at 249). Although she generally remains at home, Plaintiff reports that she is able to leave the house alone as needed and can drive a car. (*Id.* at 249-50).

From 1998-2005, Plaintiff worked in a factory that produced books. (*Id.* at 49). In 2006, she began working as a salesperson, cashier, and assistant manager at a clothing store called Rainbow. (*Id.* at 50). Subsequently, Plaintiff held similar positions at a clothing store called Kid City. (*Id.* at 57-58). Plaintiff worked at Kid City until October 2013 when she stopped working due to medical issues. (*Id.* at 46, 57-58, 289).

### C. Medical Background

Plaintiff was involved in a motor vehicle accident on August 15, 2012. (*Id.*). After the car accident, Plaintiff allegedly began to suffer from back pain that continues to prohibit her from working. (*Id.* at 46, 51-52). On November 26, 2012, an MRI of Plaintiff's cervical spine

showed an abnormality at the base of the odontoid process and bulging annulus at C3-C4 and C4-C5 but no herniation or compromise of a nerve root. (*Id.* at 264). According to the MRI, Plaintiff also had bulging annuli throughout her lumbar spine, an anterior disc herniation at L3-L4, and a posterior disc herniation at L5-S1. (*Id.* at 265). On June 20, 2013, Dr. Salvatore J. Milazzo, D.O. examined Plaintiff and reviewed the MRI findings. (*Id.* at 289-91). Dr. Milazzo diagnosed Plaintiff with cervical strain, sprain, and cervicalgia with disc bulges at C3-4 and C4-5; thoracic strain, sprain, thoracalgia, and vertebral subluxation; lumbosacral strain, sprain, and lumbalgia with evidence of disc bulge at L3-4 and herniation at L5-S1; right shoulder strain and myositis; and left hip strain and myofascitis. (*Id.* at 290).

Thereafter, Plaintiff began attending physical therapy and receiving caudal epidural steroid injections to relieve symptoms associated with Plaintiff's diagnoses. On September 5, 2013, Plaintiff reported that her pain improved by 70 to 80% after her second steroid injection. (*Id.* at 273). In October 2013, however, Plaintiff again complained of progressively increasing back pain and sought chiropractic treatment from Jason Weber, D.C., who recommended continued physical therapy and additional pain management. (*Id.* at 296). Additionally, Chiropractor John R. Mordaga evaluated Plaintiff in April 2014. (*Id.* at 337). Mr. Mordaga noted that Plaintiff had episodes of exacerbation of pain in her lumbar and cervical spine, especially when Plaintiff's activity was increased, and that "permanent partial impairment is medically probable." (*Id.*).

Plaintiff also suffers from a stomach condition known as gastritis, which causes her stomach to swell. (*Id.* at 59). During these episodes, Plaintiff experiences dizziness, pain, and vomiting and is often unable to stand and walk. (*Id.* at 59, 61). She also testified that when her stomach distends, she is asphyxiated. (*Id.* at 51). At times, Plaintiff alleges that she is in such severe pain from the combination of her musculoskeletal impairments and gastritis symptoms that

she is immobilized for up to two to three days. (*Id.* at 52). An endoscopy performed in November 2014 revealed that Plaintiff had mildly severe reflux esophagitis, a hiatus hernia, and acute gastritis. (*Id.* at 372).

## III. LEGAL STANDARDS

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B. Determining Disability

4

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).

The SSA follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the Plaintiff has an impairment that limits his ability to work. *Id.* Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's

RFC is enough to perform his past relevant work. *Id.* Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

## IV. DISCUSSION

Plaintiff argues that the ALJ failed to meaningfully consider the effect of Plaintiff's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step. (ECF No. 15 ("Pl. Br.") at 19). The Commissioner argues that the ALJ expressly considered Plaintiff's obesity and, therefore, substantial evidence supports the ALJ's conclusion. (ECF No. 16 ("Def. Br.") at 13). The Court finds that the ALJ did not adequately consider Plaintiff's obesity and, therefore, this matter must be vacated and remanded for further proceedings.

### A. Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA and had not engaged in substantial gainful work activity since the onset date of the alleged disability. (Tr. at 25). At steps two and three, the ALJ decided that Plaintiff has the following severe impairments: bulging and herniated discs in the lumbar spine and C3-C4 and C4-C5 bulging annulus and abnormality at the base of the odontoid process, obesity, and gastritis with reflux esophagitis, and small hiatal hernia. (*Id.*). The ALJ also concluded that Plaintiff's right knee pain was not a severe impairment. (*Id.*). Based on these findings, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets, either individually or in

combination, any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 25-26).

Next, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff can only occasionally lift and carry 10 pounds and is restricted to work that could be done either sitting or standing and that allows her to alternate between sitting and standing without having to stop working. (*Id.* at 26). To reach this conclusion, the ALJ considered Plaintiff's adnominal/gastrointestinal issues and spinal impairments. (*Id.* at 26-31). The ALJ also evaluated the opinion evidence of record. (*Id.* at 32-33). Based on this information, the ALJ concluded that, although "the record shows abnormal musculoskeletal, neurological, and abdominal/gastrointestinal related findings," the combined effect of her impairments do not support limitations beyond those assessed in the residual functional capacity. (*Id.* at 31).

Then, the ALJ found at step four that Plaintiff was unable to perform past relevant work. (*Id.* at 33). At step five, however, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and residual functional capacity. (*Id.*). Based on testimony from a vocational expert and information contained in the Dictionary of Occupational Titles, the ALJ determined that Plaintiff would be able to perform the requirements of occupations such as sorter, packer inspector, or garment sorter. (*Id.* at 34-35). Therefore, the ALJ concluded that Plaintiff is not disabled as defined in the SSA. (*Id.*).

**B. Analysis**

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's obesity, alone and in combination with Plaintiff's other impairments, at step three and at every subsequent step. (Pl. Br.

7

at 16-19). The Court agrees. "[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments . . . at step three and every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). Meaningful consideration requires that the ALJ "set forth the reasons for his decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981). Specifically, the ALJ must "provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review." *Diaz*, 577 F.3d at 504 (citing *Burnett*, 220 F.3d at 120). The Court is at a loss in its reviewing function where the ALJ fails to analyze the cumulative impact of a claimant's obesity coupled with other impairments. *Id.*

The Court finds that the ALJ's analysis of Plaintiff's obesity runs afoul of the Third Circuit's requirement that obesity be meaningfully considered, individually and in combination with other impairments. *Diaz*, 577 F.3d at 504. Here, the ALJ concluded at step two that Plaintiff's obesity is a severe impairment. (Tr. at 25). Then, at step three, the ALJ wrote that he "considered the claimant's 'obesity' in accordance with sections 1.00Q, 3.00I, and 4.00F and SSR 02-1p." (*Id.* at 26).[2] Later, when making his RFC determination, the ALJ noted that he considered "the additional effect of obesity in accordance with SSR 02-1p." (*Id.* at 31).

Similar obesity analyses have been rejected by this Court. *See, e.g., Alicea v. Comm'r of Soc. Sec.*, No. 13-cv-7302, 2014 WL 6978457, at *7 (D.N.J. Dec. 8, 2014); *Padilla v. Astrue*, No. 10-CV-4968, 2011 WL 6303248, at *7 (D.N.J. Dec. 15, 2011). In *Padilla*, the Court found that

---

[2] Sections 3.00I and 4.00F of the Listings cover pulmonary and cardiovascular impairments, respectively. Plaintiff does not allege any pulmonary or cardiovascular impairments and, therefore, these sections are inapplicable to Plaintiff.

8

the ALJ's statement that he evaluated the impairment pursuant to SRR 02-1p and "considered obesity in the context of the overall record evidence in making this decision" was inconsistent with the requirements mandated by the Third Circuit. *Id.* Specifically, the Court held the ALJ erred because the analysis was conclusory and did not "allow for meaningful judicial review." *Id.*; *see also Moore v. Comm'r of Soc. Sec.*, No. CIV. 2:11-05369 KM, 2013 WL 941558, at *4 (D.N.J. Mar. 8, 2013) ("A blanket statement that an ALJ has considered evidence is not the same thing as an ALJ actually discussing the evidence and clearly setting forth the reasons for his decision as *Diaz* and *Burnett* require.").

Here, the ALJ's consideration of obesity is also merely a conclusory statement and evades any meaningful judicial review. *Diaz*, 577 F.3d at 504. The ALJ did not engage in a discussion of the evidence concerning Plaintiff's obesity nor did he explain how Plaintiff's obesity factored into his conclusions. Moreover, as in *Diaz*, Plaintiff complains of impairments which would seem, "as a matter of common sense," to have been plausibly exacerbated by her obesity. *Diaz*, 577 F.3d at 504 (citations omitted); *see also* SSR 02-1p, 2002 WL 34686281, at *3 (Sept. 12 2002) ("Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems."). Although the ALJ concluded at step two that Plaintiff suffers from severe musculoskeletal and intestinal impairments, the ALJ fails to explain how Plaintiff's obesity may have affected these comorbid impairments that could have plausibly been intensified by her obesity. Furthermore, the ALJ did not describe how Plaintiff's obesity, in combination with her other impairments, would impact her ability to work. In fact, the ALJ's analysis at step five does not contain any mention of Plaintiff's obesity. Accordingly, the Court finds that the ALJ erred by failing to meaningfully consider Plaintiff's

obesity.

The Commissioner relies on *Rutherford v. Barnhart*, where the Third Circuit found no error despite the ALJ's refusal to consider obesity. 399 F.3d 546, 552 (3d Cir. 2005). In *Rutherford*, however, the claimant "never mentioned obesity as a condition that contributed to her inability to work" and the ALJ did not find obesity to be a severe impairment. *Id.* Here, as in *Diaz*, the ALJ found that obesity was a severe impairment at step two. (Tr. at 25). Moreover, the claimant asserted, and the ALJ acknowledged Plaintiff's obesity at the hearing. (*Id.* at 45). Therefore, *Rutherford* is inapplicable here. Where a claimant asserts, and the ALJ finds, that obesity is a severe impairment, it must be given meaningful consideration at step three and every subsequent step. *Diaz*, 577 F.3d at 504. The Court finds that the ALJ has failed to adequately consider Plaintiff's obesity at step three and at every subsequent step of his analysis.

Hence, this matter must be vacated and remanded for further proceedings. On remand, the ALJ should consider the interplay between obesity and Plaintiff's musculoskeletal impairments, which is specifically underscored by SSR 02-1p. *See Diaz*, 577 F.3d at 504. Because this matter is being remanded, the Court need not address Plaintiff's arguments regarding additional purported errors.

### Conclusion

For the foregoing reasons, the ALJ's decision is hereby vacated and remanded for further findings consistent with this Opinion. An appropriate Order accompanies this Opinion.

DATED: January 30, 2019

CLAIRE C. CECCHI, U.S.D.J.